**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:22-cv-03181-DDD-KLM

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

REVEN HOLDINGS, INC. d/b/a Reven Pharmaceuticals;
REVEN PHARMACEUTICALS, INC.;
BRIAN D. DENOMME;
PETER B. LANGE; and
MICHAEL A. VOLK,

       Defendants, and

REVEN, LLC;
REVEN IP HOLDCO, LLC;
REVEN ONCOLOGY LICENSING, LLC; and
HEALTH ANALYTICS AND RESEARCH SERVICES, LLC,

     Relief Defendants.

---

**\*\*<u>FILED UNDER SEAL</u>\*\***

**ORDER GRANTING PLAINTIFF'S EX PARTE MOTION FOR
TEMPORARY RESTRAINING ORDER AND ASSET FREEZE**

---

    Plaintiff U.S. Securities and Exchange Commission moves for a temporary restraining order (1) prohibiting the defendants from violating the anti-fraud provisions of federal securities laws; (2) prohibiting Defendants Brian D. Denomme, Peter B. Lange, and Michael A. Volk (the "Reven Principals") from offering or selling securities; (3) freezing the defendants' and relief defendants' assets; and (4) providing other ancillary relief. (Doc. 3.) The Commission has made a clear showing that it will likely be successful in proving that the defendants have violated

federal securities laws and will likely do so again if they are not re-
strained. A temporary freeze of the defendants' and relief defendants'
assets appears necessary to ensure that those assets remain available
to cover any disgorgement or civil penalties that may become due if the
Commission prevails in this litigation. Accordingly, the Commission's
motion is granted.

## BACKGROUND

The Commission's complaint and motion are lengthy and accompa-
nied by numerous voluminous exhibits, which I have reviewed in detail.
But the pertinent facts, as alleged by the Commission and demonstrated
by the declarations and exhibits in the record, are summarized as fol-
lows.

Defendant Reven Holdings, Inc. was formed through a reorganiza-
tion of Defendant Reven Pharmaceuticals, Inc. and is a successor corpo-
ration to Reven Pharmaceuticals. Defendant Denomme is a co-founder,
member of the board, and the current president and former Chief Oper-
ating Officer of Reven Holdings. Defendant Lange is a co-founder, mem-
ber of the board, and the current Chief Executive Officer of Reven Hold-
ings. Defendant Volk is a co-founder, member of the board, and the cur-
rent Chief Strategy Officer and former Chief Financial Officer of Reven
Holdings. Collectively, the Reven Principals control the majority of the
stock of Reven Holdings. Each of the Reven Principals is a signatory on
and has authority over the bank accounts of Reven Holdings and Reven
Pharmaceuticals, into which investor funds were paid and from which
disbursements have been made.

Reven Holdings was formed as a privately held biotechnology and
pharmaceutical holding company with the purpose of acquiring and
commercializing pharmaceutical assets, including a drug treatment

called RJX. Reven Pharmaceuticals has dissolved and transferred its liabilities and assets, including intellectual property relating to RJX (the "RJX IP"), to Relief Defendant Reven, LLC, which is a wholly owned subsidiary of Reven Holdings. Relief Defendant Reven IP Holdco, LLC is also a subsidiary of Reven Holdings, and Reven, LLC appears to have transferred RJX IP to Reven IP Holdco. Relief Defendant Reven Oncology Licensing, LLC is a subsidiary of Reven, LLC and may also own or control RJX IP. Relief Defendant Health Analytics & Research Services, LLC is a company owned by the Reven Principals.

From January 2019 to as recently as September or October 2022, the defendants solicited investors to buy stock in Reven Holdings. Reven Holdings has raised at least $44 million from approximately 175 investors through the sale of Reven Holdings securities, including common stock and notes convertible to common stock. The Reven Principals, using their control over the Reven Holdings and Reven Pharmaceuticals bank accounts, have misappropriated at least $8.8 million of investor funds through a variety of means, including making payments directly to their personal bank accounts, paying personal credit cards, and transferring over $1.8 million to Health Analytics, which they utilized as a shell company to facilitate transferring investor funds to themselves.

By email, including email distribution of private placement memoranda and "investor decks," the defendants made the following false representations to prospective investors:

- The Reven Principals' collective annual compensation was or would be between $1.62 million and $2.3 million in 2019.

- The Reven Principals' collective annual compensation was $1.98 million in 2020.

- The Reven Principals collective annual compensation was $2.16 million in 2021.

- Reven Holdings would soon or already did have the minimum two years of audited financial statements required for an initial public offering, and it was preparing for an IPO to take place in 2020 or 2021.

- Reven Holdings was preparing for a direct public offering to take place in 2021 and had completed or would soon complete all of the necessary groundwork, including filing an S-1 registration statement with the SEC.

- Reven Holdings, Reven Pharmaceuticals, Mr. Lange, and Mr. Volk were not the subject of any litigation.

But in reality:

- The Reven Principals collectively took $5.35 million in compensation in 2019, $3.36 million in 2020, and $6.65 million in 2021.

- Reven Holdings never retained any accounting or auditing firm to perform an audit of its financial statements; it never even had the accounting and bookkeeping records necessary to generate financial statements capable of being audited; and no audit of its financial statements was ever started let alone completed.

- Reven Holdings never submitted an S-1 registration statement to the SEC, nor could it have, because an S-1 registration statement requires audited financial statements.

- The defendants were the subject of a lawsuit in which the plaintiff, a Reven Holdings shareholder, alleged that Reven Holdings; Reven Pharmaceuticals; Reven, LLC; Mr. Lange; and Mr. Volk had committed securities fraud.

The Commission alleges that the defendants violated the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"), and that they will continue to do so unless they are restrained.

## APPLICABLE LAW

Ordinarily, a party seeking a temporary restraining order must show: (1) that it is substantially likely to succeed on the merits; (2) that it will suffer irreparable injury if the court denies the requested relief; (3) that its threatened injury without the restraining order outweighs the opposing party's under it; and (4) that the requested relief is not adverse to the public interest. *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1091 (D. Colo. 2020) (standard for temporary restraining order is same as that for preliminary injunction (citing *Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002))). And a court may issue a temporary restraining order without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

But when "defendants are engaged in, or about to be engaged in, [acts] or practices prohibited by a statute which provides for injunctive relief to prevent such violations," the traditional equitable factors, including irreparable harm, need not be shown. *Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1035 (10th Cir. 1993); *see also Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981) (collecting cases and noting that other courts have applied this rule to Securities Act and Exchange Act); *Commodity Futures Trading Comm'n v. Wall Street Underground, Inc.*, 128 F. App'x 726, 728

(10th Cir. 2005) (applying rule to Commodity Exchange Act). Such is the case here. The Commission seeks injunctive relief pursuant to the Securities Act and the Exchange Act, which provide that:

> Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of [securities laws], the Commission may . . . bring an action in any district court of the United States . . . to enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

15 U.S.C. § 77t(b) (Securities Act); *accord* 15 U.S.C. § 78u(d)(1), (5) (Exchange Act). The Commission therefore "need only show that the statutory conditions for the issuance of an injunction [are] met." *Mical*, 1 F.3d at 1036; *accord Sec. & Exch. Comm'n v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808-09 (2d Cir. 1975). The "proper showing" required by the Securities Act and the Exchange Act "include[s], at a minimum, proof that a person is engaged in or is about to engage in a substantive violation of either one of the Acts or of the regulations promulgated thereunder." *Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 700-01 (1980).

While the traditional four-factor test for a temporary restraining order does not apply here, that does not mean a court should not take equitable considerations into account when deciding whether to grant injunctive relief. *See Sec. & Exch. Comm'n v. Unifund SAL*, 910 F.2d 1028, 1035-40 (2d Cir. 1990). "[T]he Commission should be obliged to make a more persuasive showing of its entitlement to [injunctive relief] the more onerous are the burdens of the injunction it seeks." *Id.* at 1039. Where, as here, the Commission seeks injunctive relief that mandates action or alters the status quo, it must make a "clear showing" as to (1) its likelihood of proving the alleged statutory violation, and (2) the likelihood that a violation will occur again in the future. *Id.* at 1039-40;

*cf. Mrs. Fields*, 941 F.3d at 1232 (to obtain preliminary relief that mandates action or changes status quo, movant must make "strong showing" of likelihood of success on merits).

**DISCUSSION**

## I. Likelihood of Proving Defendants Violated Securities Laws

The Commission alleges the following statutory violations: (1) the defendants, by making false and misleading statements to prospective investors, violated Exchange Act Section 10(b),[1] Exchange Act Rule 10b-5(b),[2] and Securities Act Section 17(a)(2);[3] and (2) the

---

[1] Exchange Act Section 10(b) provides that:

It shall be unlawful for any person . . . by the use of any means or instrumentality of interstate commerce or of the mails . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

[2] Exchange Act Rule 10b-5 provides that:

It shall be unlawful for any person . . . by the use of any means or instrumentality of interstate commerce, or of the mails . . . (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

[3] Securities Act Section 17(a) provides that:

defendants, by engaging in deceptive conduct, violated Exchange Act Section 10(b), Exchange Act Rules 10b-5(a) and (c), and Securities Act Sections 17(a)(1) and (3).

To establish a violation under Exchange Act Section 10(b) or Rule 10b-5,[4] the Commission must prove that Defendants (1) made a misrepresentation or omission of material fact, or committed a deceptive or manipulative act, in furtherance of a scheme to defraud, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) by means of interstate commerce or the mail. *Smart*, 678 F.3d at 856; *Sec. & Exch. Comm'n v. Wolfson*, 539 F.3d 1249, 1255-66 (10th Cir. 2008); *Sec. & Exch. Comm'n v. McDuffie*, No. 12-cv-02939, 2014 WL 4548723, at *8, *10 (D. Colo. Sept. 15, 2014). Sections 17(a)(1) to (3) of the Securities Act require substantially similar proof with respect to the offer or sale of securities.[5] *Smart*, 678 F.3d at 857. The primary difference

---

> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails . . . (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

[4] The coverage of Rule 10b-5 is coextensive with that of Section 10(b). *Sec. & Exch. Comm'n v. Smart*, 678 F.3d 850, 856 n.7 (10th Cir. 2012).

[5] Although Section 10(b) requires that the fraud be committed "in connection with the purchase or sale of any security," while Section 17(a) requires that the fraud be committed "in the offer or sale of any securities," these phrases are often used interchangeably. *Wolfson*, 539 F.3d at 1263.

between Section 10(b) and Sections 17(a)(1) to (3) is in the scienter element. *Id*. Section 10(b) and Section 17(a)(1) require the Commission to establish at least recklessness, whereas negligence is sufficient for Sections 17(a)(2) and (3). *Id*.

I have examined the allegations in the Commission's complaint (Doc. 1) and motion (Doc. 3), along with the declarations (Docs. 7, 8, 9, 10, 11, 12, 13, 14) and associated exhibits in the record. The evidence clearly shows that the Commission is likely to prove the alleged statutory violations.

The Commission is likely to successfully prove that the defendants made misrepresentations or omissions of material fact and committed deceptive acts in furtherance of a scheme to defraud investors. The evidence shows that the defendants misrepresented to investors how their funds would be used, told investors that Reven Holdings was preparing to go forward with an IPO or DPO when it was not, and told investors that the defendants were not the subject of any pending litigation when in fact they were the subject of litigation alleging securities fraud. These misrepresentations were material. The investor declarations in the record state that the investors would not have invested in Reven Holdings if they had known the truth. (Doc. 9 ¶¶ 13, 31, 43; Doc. 11 ¶ 10; Doc. 12 ¶ 15); *see City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1265 (10th Cir. 2001) (statement or omission is material if reasonable investor would consider it important in determining whether to buy stock).

As to scienter, the evidence shows that the Reven Principals' actions here were at a minimum reckless, and likely "go beyond mere recklessness and indicate a deliberate intent to defraud investors." *Smart*, 678 F.3d at 857. I therefore need not consider whether the Commission might also prove that the Reven Principals were negligent. And the

Reven Principals' scienter can be attributed to Reven Holdings itself. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106 (10th Cir. 2003) (scienter of senior controlling officers acting within scope of their apparent authority may be attributed to corporation itself).

The Commission is also likely to successfully prove that the defendants' misrepresentations were made in connection with the purchase or sale of Reven Holdings stock. *See Smart*, 678 F.3d at 857 (misrepresentation made to induce someone to purchase security is made "in connection with the purchase or sale of a security").

Finally, the Commission also will likely be successful in showing that the defendants' misrepresentations and deceptive acts were made by means of and using instrumentalities of interstate commerce. *See, e.g.*, *Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 441 n.24 (E.D.N.Y. 2016) (internet, email, and wire transfers are instrumentalities of interstate commerce). The defendants disseminated false and misleading statements by email to investors and prospective investors in multiple states, and investors wired money across state lines to purchase Reven Holdings stock.

## II. Likelihood that Defendants Will Continue to Violate Securities Laws if Not Restrained

The evidence clearly shows that the defendants will likely continue their statutory violations in the future if they are not restrained.

Determination of the likelihood of future violations "requires analysis of several factors, such as the seriousness of the violation, the degree of scienter, whether [the] defendant's occupation will present opportunities for future violations[,] and whether [the] defendant has recognized his wrongful conduct and gives sincere assurances against future

violations." *Sec. & Exch. Comm'n v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993). The degree of scienter "bears heavily" on the analysis, and a knowing violation of the securities laws will justify an injunction more readily than a reckless or negligent one. *Id.*

The evidence indicates that the Reven Principals perpetrated a scheme to defraud over a period of years. The alleged violations here are serious, resulting in millions of dollars of misappropriated investor funds. And the Reven Principals have not recognized their wrongful conduct—they continued to make misrepresentations to investors as recently as September 2022. (Doc. 9 ¶¶ 33-36.) Given these facts, I find there is a substantial likelihood that the defendants will violate securities laws in the future. I will therefore grant the Commission's request for a temporary restraining order.

## III. Forms of Temporary Relief Sought

The Commission requests a temporary restraining order that (1) prohibits the defendants from violating the anti-fraud provisions of the Securities Act and the Exchange Act; (2) prohibits the Reven Principals from offering or selling securities, except in their own personal accounts; (3) freezes the defendants' and relief defendants' assets to ensure that any disgorgement or civil penalties that may become due can be collected; (4) compels the defendants and relief defendants to provide an accounting of assets, transactions, and investors; (5) requires the defendants and relief defendants to preserve relevant evidence; (6) provides for expedited discovery and authorizes alternative service; and (7) requires the defendants to show cause why the temporary restraining order should not be converted to a preliminary injunction that will remain in effect during the pendency of the litigation. I find that each of these requests is warranted.

The Commission's clear showing that it will likely prove the alleged statutory violations and that the defendants are likely to continue such violations warrants a prohibition against future violations. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1); *Unifund*, 910 F.3d at 1040. A prohibition against offering or selling Reven Holdings securities will protect existing investors and potential new investors from being subject to additional fraudulent activities while the litigation is pending. And an asset freeze is appropriate to facilitate enforcement of any remedy that might be ordered in the event a violation is established on summary judgment or at trial. *Unifund*, 910 F.3d at 1041; *Sec. & Exch. Comm'n v. End of Rainbow Partners, LLC*, No. 17-cv-02670-MSK-NYW, 2017 WL 5404199, at *2 (D. Colo. Nov. 14, 2017) (purpose of asset freeze is to advance public interest in ensuring ill-gotten funds can be secured to satisfy potential future judgment); *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 225 (2d Cir. 2010) (court may freeze assets of relief defendant if plaintiff is likely to succeed in showing that relief defendant possesses ill-gotten funds to which it lacks a legitimate claim).

An accounting will assist the Commission in identifying the location of assets that were obtained as a result of the defendants' fraudulent activity. *See Sec. & Exch. Comm'n v. Int'l Swiss Invs. Corp.*, 895 F.2d 1272, 1276 (9th Cir. 1990) (court had power to grant preliminary injunction ordering "an accounting the purpose of which is to identify assets subject to disgorgement"). A preservation order will prevent the defendants and relief defendants from altering or destroying documents and evidence relevant to this action. *See Unifund*, 910 F.2d at 1040 n.11 (where asset freeze was warranted, evidence preservation order was "innocuous" addition to preliminary injunction that "should not be disturbed"). And expedited discovery and authorization of alternative service will enable the parties to promptly prepare for a preliminary-

injunction hearing, which I must expedite and "set for the earliest possible time." Fed. R. Civ. P. 65(b)(3).

## IV. Issuing Temporary Restraining Order Without Notice

The Commission's attorney has certified in writing that providing the defendants and relief defendants advance notice of its motion for temporary restraining order would allow the defendants to dissipate or conceal assets before an asset freeze is effectuated, to the detriment of harmed investors. (Doc. 3-1.) The Commission's attorney states that "[g]iven the egregious and ongoing nature of the Defendants' fraud, the SEC believes there is a high likelihood of dissipation or concealment should the Defendants be given notice." (*Id.* ¶ 6.) I agree. And the defendants' dissipation or concealment of assets could cause immediate and irreparable loss to investors should the defendants thereby evade payment of any disgorgement that may become due. Accordingly, this Order is issued without notice to the defendants and relief defendants pursuant to Federal Rule of Civil Procedure 65(b)(1).

## CONCLUSION

## I.   It is ORDERED that:

Plaintiff United States Securities and Exchange Commission's Ex Parte Emergency Motion for a Rule 65(b)(1) Temporary Restraining Order, an Asset Freeze, and Other Emergency Relief (Doc. 3) is GRANTED.

Pursuant to Federal Rule of Civil Procedure 65(b), 15 U.S.C. § 77t(b), and 15 U.S.C. § 78u(d)(1),

A. Defendants Reven Holdings, Inc.; Reven Pharmaceuticals, Inc.; Brian D. Denomme; Peter B. Lange; and Michael A. Volk

("Defendants"), and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from, directly or indirectly, in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), in the offer or sale of any security by the use of any means or instruments of transportation, or communication in interstate commerce or by the use of the mails:

    (1) employing any device, scheme, or artifice to defraud; or

    (2) obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (3) engaging in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser.

B. Defendants and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from, directly or indirectly, in violation of Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in connection with the purchase or sale of any security by the use of any means or instruments of transportation, or communication in interstate commerce or by the use of the mails:

    (1) employing any device, scheme, or artifice to defraud; or

(2) making any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3) engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

C. Subject to the asset freeze in Paragraph D, *infra*, Defendants Brian D. Denomme, Peter B. Lange, and Michael A. Volk (the "Reven Principals"), and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from, directly or indirectly, including, but not limited to, through any entity owned or controlled by them, participating in the issuance, purchase, offer, or sale of any security, provided, however, with the exception of any securities issued by Reven Holdings, Inc. or Reven Pharmaceuticals, Inc., that such injunction does not prevent them from purchasing or selling securities for their own personal account.

D. Pending further action by this Court,

(1) All assets, funds, or other property of any kind, including without limitation intellectual property, including patents or trademarks, held by, or under the direct control of Defendants or Relief Defendants Reven, LLC; Reven IP Holdco, LLC; Reven Oncology Licensing, LLC; and Health Analytics and Research Services, LLC ("Relief Defendants"), whether held in any of their names or for their direct or indirect beneficial interests, or subject to their direct or indirect control, wherever

located or by whomever held, and whether acquired before or after institution of this action, are frozen and will not be sold, transferred, or encumbered in any way, (with allowance for necessary and reasonable living expenses to be granted by this Court only upon good cause shown by application to the Court with notice to and an opportunity for the plaintiff to be heard);

(2) Defendants, Relief Defendants, and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise must hold and retain within their control, and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever (including the use of any credit cards or other incurring of debt) of any of their funds, property (including money, virtual currency or other digital asset, real or personal property, tangible assets, securities, commodities, choses in action, or other property of any kind whatsoever, in whatever form such assets may exist and wherever located), intellectual property, including patents or trademarks, or other assets or things of value held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located;

(3) Any bank, financial, brokerage institution, corporation, licensor/licensee, or other person or entity holding any funds, securities, intellectual property, including patents or trademarks, or other assets in the name of, for the benefit of, or under the control of Defendants, Relief Defendants, or their officers, agents, servants, employees, attorneys, or any other persons

who are in active concert or participation with them, must hold and retain within their control and prohibit the withdrawal, removal, transfer or other disposal of any such funds, intellectual property, including patents or trademarks, or other assets.

This Order specifically applies, but is not limited, to the following accounts:

| Financial Institution | Account Name | Account Number(s) |
|---|---|---|
| Bank of America, N.A. | Brian D. and Penny S. Denomme | x2882 |
| Bank of America, N.A. | Brian D. and Penny S. Denomme | x3366 |
| Huntington National Bank | Brian David and Penny Sue Denomme | x4850/x3913 |
| Merrill Lynch & Co., Inc. | Brian D. Denomme | Unknown |
| Okapi LLP | Michael Allen Volk and/or Heidi Renae Motschenbacher | Unknown |
| Raymond James & Associates, Inc. | Brian D. Denomme | Unknown |
| Robinhood Financial LLC | Brian D. Denomme | Unknown |
| Wells Fargo Bank, N.A. | Michael A. Volk and Heidi R. Motschenbacher | x0126 |
| Wells Fargo Bank, N.A. | Carter A. and Michael A. Volk | x1027 |
| Wells Fargo Bank, N.A. | Michael A. Volk | x1502 |
| Wells Fargo Bank, N.A. | Health Analytics Research Services LLC | x2346 |
| Wells Fargo Bank, N.A. | Peter B. Lange and Yu Dedecker | x2371 |

| Financial Institution | Account Name | Account Number(s) |
| --- | --- | --- |
| Wells Fargo Bank, N.A. | Peter B. Lange | x2590 |
| Wells Fargo Bank, N.A. | Michael A. Volk and Heidi R. Motschenbacher | x5354 |
| Wells Fargo Bank, N.A. | Carter A. and Michael A. Volk | x5621 |
| Wells Fargo Bank, N.A. | Peter B. Lange | x6655 |
| Wells Fargo Bank, N.A. | Peter B. Lange | x8442 |
| Wells Fargo Bank, N.A. | Michael A. Volk | x8703 |
| Wells Fargo Bank, N.A. | Grayson and Michael A. Volk | x9641 |
| Wells Fargo Bank, N.A. | PBMRE1 LLC | x5560 |
| Wells Fargo Bank, N.A. | Ahvo LLC | x9469 |

(4) No person or entity, including Defendants and Relief Defendants, or any creditor or claimant against them or any person acting on behalf of such creditor or claimant, may take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this Order; provided, however, that any party or non-party may seek leave from this Order upon a proper showing;

(5) Copies of this Order may be served by any means, including facsimile transmission, email, and overnight courier, upon any entity or person that may have possession, custody, or control of any assets of Defendants or Relief Defendants that may be subject to any provision of this Order; and

(6) Plaintiff U.S. Securities and Exchange Commission (the "Commission") may file Notices of *Lis Pendens*, or any similar document that has the effect of clouding title, on all pieces of real property in which Defendants or Relief Defendants have an interest. Should Defendants or Relief Defendants wish to sell any piece of real property in which they have an interest, they must give counsel for the Commission notice of the proposed sale and seek and obtain an order of the Court permitting the sale prior to the sale. Defendants and Relief Defendants must fully account for any proceeds received from the sale of such property to the Court and counsel for the Commission, and the proceeds of such sales will be frozen under the provisions of this Order; and Defendants and Relief Defendants are hereby prohibited from further encumbering their interests in any real or personal property by means of pledging it for collateral for any purpose or by allowing it to secure any obligation.

E. Defendants, Relief Defendants, and their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are TEMPORARILY RESTRAINED from destroying, mutilating, concealing, altering, disposing of, or otherwise interfering with the access of the plaintiff to any and all books, records, documents, data, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property that are in the possession, custody, or control of Defendants, Relief Defendants, or any of their officers, agents, servants, employees, attorneys, or any other persons who are in active concert or participation with them, that refer, reflect, or relate to the allegations in the Complaint, or that refer, reflect, or relate to

Defendants' and Relief Defendants' assets, finances, or business operations, wherever located and in whatever form, electronic or otherwise.

F. Defendants, Relief Defendants, and each of their successor corporations, subsidiaries, and affiliates, must, within five business days of service of this Order, each file with the Court and serve on the Commission at the address of its counsel of record, a sworn accounting of:

(1) Each account, including safe deposit boxes, with any bank, financial institution, or brokerage firm, maintained in the names of Defendants, Relief Defendants, or the names of any subsidiary, affiliate, or agent, in which they have direct or indirect control or beneficial interest, and the current value and makeup of that account;

(2) All investments, securities, funds, real estate, intellectual property, and other assets held in the names of Defendants, Relief Defendants, or in the names of any subsidiary, affiliate, or agent or under their direct or indirect control, stating a description, a value, and location of such assets and identifying which party owns or controls the assets;

(3) Every transaction exceeding $5,000 in value in which the ownership, direction, or control of any funds or other assets of any kind have been transferred, directly or indirectly, to or from Defendants Reven Holdings, Inc. or Reven Pharmaceuticals, Inc. since January 1, 2019;

(4) Every transaction exceeding $5,000 in value in which the ownership, direction, or control of any funds or other assets of any kind, including without limitation, intellectual property, have

been transferred, directly or indirectly, to or from Relief Defendants since January 1, 2019;

(5) Every transaction exceeding $3,000 in value in which the ownership, direction, or control of any funds or other assets of any kind have been transferred, directly or indirectly, to or from the Reven Principals since January 1, 2019; and

(6) The current locations of all funds or other assets received from any third party for the purpose of investment in Reven Holdings, Inc. or Reven Pharmaceuticals, Inc., or any investment managed by Reven Holdings, Inc.; Reven Pharmaceuticals, Inc.; the Reven Principals, or any combination thereof, from June 2022 until the present; specifying the investor from whom the funds or other assets were received or obtained; the date(s) such funds or other assets were received; the current locations of all such funds or other assets; the disposition of any such funds or other assets including the date, amount, recipient and purpose of each disbursement; and the location, title, and account numbers at any financial institution to which any such funds or other assets have been transferred.

G. Commencing at the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Federal Rules of Civil Procedure 26, 30, 33, 34, 36, and 45, discovery will proceed as follows:

(1) All discovery requests may be served by email on counsel for any party, or if a party is unrepresented, discovery requests may be served by facsimile, email, overnight mail, courier, or process server;

(2) Pursuant to Federal Rule of Civil Procedure 30(a), the parties may take depositions by oral examination on three business days' notice of any such deposition. Depositions may be taken telephonically or by video conferencing system. As to Defendants and their officers, directors, subsidiaries and affiliates, agents, servants, employees, owners, brokers, associates, trustees, and underwriters, the Commission may depose such witnesses after serving a deposition notice by facsimile, email, mail, or hand or overnight courier upon such defendant and without serving a subpoena on such witness. Deposition transcripts that have not been signed by the witness may be used for purposes of the hearing on the Commission's motion for a preliminary injunction. Any witness that fails to appear for his or her duly noticed deposition is prohibited from testifying or providing a declaration at the preliminary-injunction hearing;

(3) Pursuant to Federal Rule of Civil Procedure 33(a), the parties must answer interrogatories within three business days of service of such interrogatories. Interrogatories may be served and answered by facsimile, email, mail, or hand or overnight courier upon the parties or their counsel;

(4) Pursuant to Federal Rule of Civil Procedure 34(b), the parties must produce all documents, electronically stored information, or designated tangible things requested within three business days of service of such request. Documents produced to the Commission must be delivered by email to the email addresses of counsel of record or as the Commission may direct in writing;

(5) Pursuant to Federal Rule of Civil Procedure 36(a), the parties must respond to requests for admissions within three business days of such requests; and

(6) In connection with any discovery from any non-party, deposition or document discovery may be had within four business days of service of a subpoena pursuant to Federal Rule of Civil Procedure 45. Service of a subpoena may be made by facsimile, email, mail, or hand or overnight courier.

Pursuant to Federal Rule of Civil Procedure 65(b)(2), this Order will expire fourteen days after entry, unless the Court extends it for good cause before that time or the Court grants a motion to dissolve or modify it pursuant to Federal Rule of Civil Procedure 65(b)(4).

Pursuant to Federal Rule of Civil Procedure 65(c), 15 U.S.C. § 77t(b), and 15 U.S.C. § 78u(d)(1), the Commission is not required to give security.

Nothing in this Order should be construed to require Defendants or Relief Defendants to abandon or waive any constitutional or other legal privilege that they may have available to them, including their Fifth Amendment privilege against self-incrimination. In turn, nothing in this Order prevents the Commission from opposing or challenging any assertion by Defendants or Relief Defendants of any Fifth Amendment privilege against self-incrimination, or any other constitutional or other legal privilege.

## II.  It is **FURTHER ORDERED** that:

As soon as possible but no later than one business day after the asset freeze is effectuated, the Commission must serve each defendant and relief defendant with (1) a summons; (2) the Complaint (Doc. 1) and all

attachments thereto; (3) the Commission's emergency motion (Doc. 3), all attachments thereto, and the declarations filed in support thereof (Docs. 7, 8, 9, 10, 11, 12, 13, 14) and all attachments thereto; and (4) this Order. Service may be made by facsimile, mail, email, delivery by courier or process server, or in any other manner authorized by Federal Rule Civil Procedure 5, and may be made on any registered agent, officer, or director of the defendants and relief defendants, or on counsel that has agreed to accept service. The Commission must promptly file proof of service in accordance with Federal Rule of Civil Procedure 4(l)(1).

A Preliminary Injunction Hearing is SET for January 13, 2023 at 9:30 a.m., at which the defendants and relief defendants must SHOW CAUSE why the Court should not enter a preliminary injunction extending the temporary relief granted in this Order pending a final adjudication on the merits.

The defendants and relief defendants may file a written response to the Commission's motion for preliminary injunction (Doc. 3) no later than January 11, 2023. The Commission may, but is not required to, file a reply in support of the motion no later than 1:00 p.m. on January 12, 2023.

Pursuant to Federal Rule of Civil Procedure 43(c), all direct witness testimony must be submitted by affidavit in advance of the hearing, and live testimony at the hearing will be limited to cross-examination and redirect examination. Both sides' witness affidavits, to the extent not already in the record, must be filed electronically no later than 1:00 p.m. on January 12, 2023.

No later than 1:00 p.m. on January 12, 2023, the parties must exchange with each other and file with the Court exhibit and witness lists,

and submit copies of all exhibits by email to Domenico_Chambers@cod. uscourts.gov as attachments or via secure download link. Except for any video or audio exhibits, the exhibits must be in PDF file format. The file name for each exhibit must include the exhibit number and description (*e.g.*, "Exhibit 1 – Smith Affidavit"). Consult DDD Civ. P.S. II(C) regarding numbering of exhibits. The parties' witness lists must include an estimate of the time required for their cross-examination of each of the opposing party's witnesses. Exhibit and witness list forms can be found at http://www.cod.uscourts.gov/JudicialOfficers/ActiveArticleIIIJudges/ HonDanielDDomenico.aspx.

At the hearing, each side will be allotted time for an opening statement, cross-examination and redirect examination of witnesses, and closing argument. The parties are advised that the Court may set time limits for each side. Counsel should be prepared to answer questions from the Court during closing arguments.

Any motions affecting the hearing must be filed by 1:00 p.m. on January 11, 2023, with responses due by 1:00 p.m. on January 12, 2023. No replies will be permitted without leave of Court.

### III. It is FURTHER ORDERED that:

Plaintiff's Motion to File Papers Under Seal (Doc. 2) is GRANTED.

Pursuant to Local Civil Rule 7.2, the Clerk of Court is directed to temporarily maintain this proceeding and all documents filed therein under Level 2 restriction, accessible only to the plaintiff and the Court. This restriction does not preclude the plaintiff from serving this Order on banks or other financial institutions in order to effectuate the ordered

asset freeze. The plaintiff must notify the Court no later than one business day after the asset freeze has been effectuated.

DATED: January 3, 2023            BY THE COURT:
                 at 5:20 p.m.

_____
Daniel D. Domenico
United States District Judge