UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.: 1:22-cv-03181-DDD-SBP

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

REVEN HOLDINGS, INC. d/b/a REVEN PHARMACEUTICALS,
REVEN PHARMACEUTICALS, INC.,
BRIAN D. DENOMME,
PETER B. LANGE,
MICHAEL A. VOLK,

        Defendants,
and

REVEN, LLC,
REVEN IP HOLDCO, LLC,
REVEN ONCOLOGY LICENSING, LLC, and
HEALTH ANALYTICS & RESEARCH SERVICES, LLC,

        Relief Defendants.

---

**DEFENDANT REVEN HOLDINGS, INC. D/B/A REVEN
PHARMACEUTICALS' REPLY IN FURTHER SUPPORT OF ITS
MOTION TO MODIFY ASSET FREEZE TO PERMIT
LITIGATION FINANCING TRANSACTION**

---

Reven[1] respectfully submits this Reply in Further Support of Its Motion

to Modify the Asset Freeze to Permit the Company to explore a Litigation

Financing Transaction, (ECF No. 193, the "Motion").

---

[1] All capitalized terms not defined herein have the meanings given to them in the Motion.

1

## ARGUMENT

On July 26, 2024, this Court entered an order that, among other things, permitted third parties to pay legal (and other) expenses on behalf of the Reven Defendants, but required Defendants, insofar as they sought to "encumber [any of] their assets" to such ends, to file a "motion identifying … the specific asset(s) sought to be encumbered."  ECF No. 156 at 18.  The Court explained that such relief from the asset freeze – even in the absence of a specific proposed transaction – was "appropriate to allow [Defendants] to *explore* alternative methods of obtaining the financing necessary to preserve Reven's assets."  *Id*. at 17–18 (emphasis added).[2]

That is precisely what Reven seeks to do by the instant Motion.  Reven requests that the Court modify the asset freeze to the limited extent of permitting it to explore a litigation financing transaction wherein the *only* "asset" that would be encumbered is the very asset sought to be preserved:  potential proceeds resulting from Reven's pending Takings Claim against the United States based on the SEC's actions in this case – *an asset that the government (necessarily) has taken the position has zero value*.

Having prevaricated for over three months as to what position it should take on this issue, the SEC now attempts to put Reven in an impossible Catch-22: knowing full well that litigation funders will not invest the necessary resources to conduct diligence, analyze, negotiate, and finalize a "specific transaction" (SEC Opp'n

---

[2] In so holding, the Court rejected the SEC's argument (regurgitated again here) that Defendants cannot be granted relief from the asset freeze unless and until they put forward "specific proposals" and "transaction terms."  ECF No. 127 at 2, 10.  MV

at 1–2) that could be negated by an asset freeze,[3] the SEC nevertheless argues that this Court should not even consider Reven's request to encumber the potential proceeds of its Takings Claim in order to explore a possible litigation financing transaction unless and until a "***specific transaction***" has been finalized and put forward. *Id*. at 1–2. This is not a principled legal position – it is a bad-faith litigation tactic, inconsistent with this Court's prior orders and the SEC's mandate, that is designed to ensure that Reven does not have adequate resources to pursue the Takings Case or to defend this action. This Court should reject the SEC's position and grant the requested relief.

As explained in the accompanying supplemental declaration of Charles Agee, Chief Executive Officer of Westfleet Advisors, litigation funders, presented with dozens of funding opportunities each month, are generally quite bandwidth constrained. *See* Agee Suppl. Decl. ¶ 3. Funders – as passive investors whose capital is fully at risk on litigation outcomes – conduct extensive diligence both before a term sheet is issued and after a term sheet is executed, but before a transaction closes. *Id*. ¶ 4. During the exclusivity period after a term sheet is signed, funders frequently incur substantial out-of-pocket costs on outside diligence and transaction counsel. *Id*. Unsurprisingly, then, funders are naturally predisposed to avoid spending time on opportunities where a path to an investment is impeded in any way. *Id*.

The asset freeze, as it exists today, is undoubtedly such an impediment. The

---

[3] *See generally* Supplemental Declaration of Charles Agee, dated January 22, 2026, and submitted herewith ("Agee Suppl. Decl.").

opportunity would not receive broad consideration from litigation funders, absent a modification to the asset freeze that would allow for a litigation funding arrangement to be negotiated and consummated. *Id.* ¶ 5. Failure to grant the requested modification would thus effectively eliminate Reven's options in this regard. *Id.* Furthermore, it is difficult to predict financing terms that may be available, especially at this stage of the process before Reven has completed a confidential information memorandum. *Id.* ¶ 6. Westfleet Advisors would not be able to proceed with marketing the opportunity based on some notion of pre-authorized financing terms because these arrangements are highly bespoke and heavily negotiated—not cookie-cutter. *Id.*

The SEC's insistence that Reven first secure a specific and definitive financing agreement is impossible to satisfy when the very existence of the asset freeze prevents funders from engaging with the opportunity in the first place. The SEC knows this. Its position is designed not to protect investors, but to prevent Reven from ever obtaining litigation financing at all.

As this Court has made clear, the key for purposes of seeking a modification of the asset freeze is for Defendants to "identify[] the specific asset(s) sought to be encumbered." ECF No. 156 at 18. Reven has indisputably done so, and consistent with this Court's prior orders, Reven should be permitted relief from the asset freeze to "explore alternative methods of obtaining the financing necessary to preserve Reven's asset[]." *Id.* at 17–18.[4]

---

[4] Consistent with this Court's prior order with respect to potential licensing agreements, Reven is agreeable to giving further notice to the SEC before consummating a specific

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, Reven respectfully requests that the Court issue an order modifying the asset freeze to expressly permit the Company to explore a litigation financing transaction as described in the Motion.

Dated:  January 23, 2026                    Respectfully submitted,

                                            */s/John E. Schreiber*
                                             John E. Schreiber
                                            Winston & Strawn LLP
                                            333 South Grand Avenue, 38th Floor
                                            Los Angeles, CA 90071-1543
                                            Telephone: 213-615-1700
                                            Email: jschreiber@winston.com

                                            *Attorney for Defendant Reven*

---

litigation financing transaction.  *See* ECF No. 156 at 18.  But Reven can never get to that point without the relief requested by this Motion.  Lastly, the SEC's reference to the sale of Defendant Volk's home as an example of its cooperation and stewardship with respect to the preservation of Defendants' assets (SEC Opp'n at 1–2) is in especially poor form.  The SEC's actions and inactions in connection with that asset resulted in the significant dissipation of its value, while allowing a third-party to profit handsomely, precisely the opposite of the SEC's mandate and stated intentions.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 23, 2026, I electronically filed the foregoing **DEFENDANT REVEN HOLDINGS, INC. D/B/A REVEN PHARMACEUTICALS' REPLY IN FURTHER SUPPORT OF ITS MOTION TO MODIFY ASSET FREEZE TO PERMIT LITIGATION FINANCING TRANSACTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Sharan Lieberman**
  liebermans@sec.gov

- **Zachary T. Carlyle**
  carlylez@sec.gov

*/s/ John E. Schreiber*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

Counsel hereby certifies that the foregoing pleading is 997 words, exclusive of the caption, signature block, and certificate of service, and therefore complies with the type-volume limitations set forth in Judge Domenico's Practice Standard III(A)(1).

6