### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:22-cv-03181-DDD-KLM

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

REVEN HOLDINGS, INC. d/b/a Reven Pharmaceuticals;
REVEN PHARMACEUTICALS, INC.;
BRIAN D. DENOMME;
PETER B. LANGE; and
MICHAEL A. VOLK,

      Defendants, and

REVEN, LLC;
REVEN IP HOLDCO, LLC;
REVEN ONCOLOGY LICENSING, LLC; and
HEALTH ANALYTICS AND RESEARCH SERVICES, LLC,

      Relief Defendants.

---

## ORDER GRANTING MOTION TO MODIFY ASSET FREEZE

---

I previously granted Plaintiff U.S. Securities and Exchange Commission's motion for a preliminary injunction (1) prohibiting the defendants from violating the anti-fraud provisions of federal securities laws; (2) prohibiting Defendants Brian D. Denomme, Peter B. Lange, and Michael A. Volk from offering or selling securities; and (3) freezing the defendants' and relief defendants' assets, Doc. 122, and subsequently entered an order lifting that freeze in part, Doc. 156. Now before me is Defendant Reven Holdings, Inc.'s motion to further modify the terms of the asset freeze to permit a litigation-financing transaction. Doc. 193. For the following reasons, the motion is granted.

- 1 -

## BACKGROUND

Reven Holdings (a successor to Defendant Reven Pharmaceuticals, Inc.) is a privately held biotechnology and pharmaceutical holding company focused on developing and commercializing a cardiovascular and anti-inflammatory drug called Rejuveinix ("RJX"). Doc. 122 at 2. Defendants Denomme, Lange, and Volk (the "Reven Principals") are co-founders, members of the board, and executive officers of Reven Holdings, and they collectively control the majority of Reven Holdings' stock. *Id.* at 2-3. Relief Defendants Reven, LLC; Reven IP Holdco, LLC; Reven Oncology Licensing, LLC; and Health Analytics & Research Services, LLC are related entities (either subsidiaries of Reven Holdings or companies owned by the Reven Principals) that hold Reven intellectual property and other assets. *Id.* at 3.

The Commission contends that the defendants violated the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") by making a number of false or misleading statements to prospective investors. *See generally* Doc. 1; Doc. 3. I previously found that the preliminary-injunction evidence clearly shows the Commission is likely to prove violations of the Securities Act and Exchange Act—specifically, that the defendants violated these laws by knowingly, recklessly, or negligently making materially false or misleading statements or omissions to prospective investors regarding (1) executive compensation, (2) Reven's readiness for a public offering, and (3) a separate lawsuit alleging that some of the defendants had committed securities fraud. Doc. 122 at 7-26. I also found that statutory violations were likely to recur if the defendants were not preliminarily

enjoined, and that an asset freeze was appropriate to preserve the defendants' funds to satisfy any future judgment.[1] *Id.* at 27-28.

The terms of the asset freeze provided that:

> All assets, funds, or other property of any kind, including without limitation intellectual property, including patents or trademarks, held by, or under the direct control of [the defendants] . . . wherever located or by whomever held, and whether acquired before or after institution of this action, are frozen and will not be sold, transferred, or encumbered in any way . . . [and]

> [The defendants] . . . must hold and retain within their control, and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal whatsoever (including the use of any credit cards or other incurring of debt) of any of their funds, property (including money, virtual currency or other digital asset, real or personal property, tangible assets, securities, commodities, choses in action, or other property of any kind whatsoever, in whatever form such assets may exist and wherever located), intellectual property, including patents or trademarks, or other assets or things of value held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist and wherever located[.]

Doc. 28 at 15-16 (TRO); Doc. 122 at 28-29 (converting asset freeze in TRO to preliminary injunction with same terms); *see also* Docs. 55, 65, 68, 72, 74, 117, 156, 192 (orders granting requested modifications to and exclusions from asset freeze).

I later narrowed the terms of the asset freeze to allow the defendants "to explore alternative methods of obtaining the financing necessary to preserve Reven's assets and keep the company afloat." Doc. 156

---

[1]    The defendants have appealed my preliminary-injunction order to the Tenth Circuit, Doc. 138, and that appeal remains pending. I denied the defendants' motion to stay the asset freeze pending resolution of their appeal. Doc. 156 at 19-21.

at 17-19. Specifically, I modified the asset freeze to: (1) permit third parties to pay expenses on behalf of Reven and its affiliates; (2) permit the Reven Principals to earn new individual income unrelated to Reven and the other defendants and use such income to pay for costs and legal expenses incurred by Reven and its affiliates; (3) permit the Reven Principals to incur new debt on an individual basis, upon motion to the Court identifying the amount of debt and the specific property sough to be incumbered, and use such funds to pay for costs and legal expenses incurred by Reven and its affiliates; and (4) unfreeze bank accounts that do not contain funds attributable to the defendants, upon motion to the Court after conferral with the Commission to identify such accounts. *Id.*

Reven Holdings now moves to modify the asset freeze to permit it to enter into a litigation-financing transaction for *Reven Holdings, Inc. v. United States*, No. 1:24-cv-01353-MBH (Fed. Cl. filed Aug. 30, 2024), with the goal of maximizing the value of any litigation proceeds for the benefit of Reven and its shareholders. Doc. 193 at 3-4.

## DISCUSSION

### I.  Applicable Law

"The purpose of an asset freeze is 'to preserve the status quo by preventing the dissipation and diversion of assets,'" and "[t]he authority temporarily to freeze a defendant's assets carries with it the 'corollary authority to release frozen . . . assets, or lower the amount frozen.'" *SEC v. Forte*, 598 F. Supp. 2d 689, 692 (E.D. Pa. 2009) (collecting cases). But before a court will unfreeze assets, a defendant must "establish that [the] modification is in the interest of the defrauded investors." *Id.*; *see also SEC v. End of the Rainbow Partners, LLC*, No. 17-cv-02670-MSK-NYW, 2019 WL 8348323, at *4 (D. Colo. Nov. 25, 2019) (R. & R.) ("[T]he disadvantages and possible deleterious effect of a freeze must be

- 4 -

weighed against the considerations indicating the need for such relief."),
*adopted by* 2020 WL 597527 (D. Colo. Feb. 7, 2020).

In evaluating whether to modify an asset freeze, courts commonly
consider a variety of factors, such as:

- The interests of the defrauded investors, including whether the frozen assets fall short of the amount necessary to compensate victims of the alleged fraud scheme, and whether unfreezing the assets would assist in returning funds to their rightful owners;

- The source of the funds to be released, including whether the assets are traceable to the allegedly fraudulent activity;

- The expenses the defendant seeks to pay; and

- The balance of interests.

*See, e.g.*, *Forte*, 598 F. Supp. 2d at 692-94; *SEC v. Abdallah*, No. 1:14
CV 1155, 2017 WL 11680996, at *3 (N.D. Ohio Mar. 24, 2017) (collecting
cases).

## II.  Analysis

I find that modifying the asset freeze to permit the contemplated lit-
igation-financing transaction is reasonable, appropriate, and in the in-
terest of the defendants' investors. "The repayment of the financing, plus
any return, would be entirely contingent upon Reven receiving a recov-
ery" in its case pending before the Court of Federal Claims, and "[n]o
other assets . . . would be encumbered in any way." Doc. 193 at 4. "[T]he
only asset that would be encumbered would be a portion of the potential
proceeds" from the case. *Id.* "Unless the . . . Case results in recovery pro-
ceeds, Reven would have no liability to make any payments to the liti-
gation funder, and any payment obligations if there were a recovery
would never exceed the amount of any such recovery." Doc. 193-1 at 2.

The Commission opposes the motion, arguing that the Court should
not permit a hypothetical transaction with an unknown funder without
knowing the specific terms of the transaction. Doc. 194 at 3. The

Commission asks that Reven Holdings "submit the proposed financing agreement for the SEC or the Court to assess possible harm to investors, conflicts of interest, or other issues that are associated with third-party litigation funding arrangements." *Id.* at 2, 3 n.3. But Reven Holdings explains that it will be unable to reach an agreement with specific terms unless the asset freeze is modified, because potential funders are un-likely to consider investing without knowing that a negotiated litigation-funding arrangement can be consummated. Doc. 195 at 3-4 ("The SEC's insistence that Reven first secure a specific and definitive financing agreement is impossible to satisfy when the very existence of the asset freeze prevents funders from engaging with the opportunity in the first place."); Doc. 195-1. Reven Holdings also states that "[c]onsistent with this Court's prior order with respect to potential licensing agreements, Reven is agreeable to giving further notice to the SEC before consum-mating a specific litigation financing transaction." Doc. 195 at 4-5 n.4; *see also* Doc. 156 at 18.

Accordingly, the asset freeze is hereby modified to permit Reven Holdings to engage in a litigation-financing transaction as described in its motion and the declaration of Charles Agee, Doc. 193-1. Consistent with my prior order regarding potential licensing agreements, Reven Holdings must give notice to the Commission before consummating any litigation-financing agreement; if the Commission objects to the pro-posed agreement, it must file an objection with the Court within one week of receiving notice; and if the Commission files an objection, Reven Holdings must respond within one week and may not consummate the agreement absent Court approval.

## CONCLUSION

It is **ORDERED** that Defendant Reven Holdings, Inc. d/b/a Reven Pharmaceuticals' Motion to Modify Asset Freeze to Permit Litigation Financing Transaction, **Doc. 193**, is **GRANTED**.

DATED: March 12, 2026          BY THE COURT:

Daniel D. Domenico
Chief United States District Judge